UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| ROSEMARY F., | ) |
| | ) |
|       Plaintiff | ) |
| | ) |
| v. | )   No. 2:25-cv-00021-SDN |
| | ) |
| FRANK BISIGNANO, | ) |
| Commissioner of | ) |
| Social Security, | ) |
| | ) |
|       Defendant | ) |

## REPORT AND RECOMMENDED DECISION

The Plaintiff in this Social Security Disability appeal contends that the Administrative Law Judge (ALJ) erred by failing to explain why he did not include any mental limitations in his residual functional capacity (RFC) assessment after finding earlier in his decision that the Plaintiff's mental impairments resulted in mild limitations. *See* Plaintiff's Brief (ECF No. 10). I discern no error and recommend that the Court affirm the Commissioner's decision.

### I. Background

The Plaintiff applied for benefits in May 2022. *See* Record at 18. After her claim was denied at the initial and reconsideration levels of review, she requested a hearing before an ALJ. *See id*. That hearing took place in November 2023, following which the ALJ issued a decision finding that the Plaintiff had the severe impairments of fibromyalgia and obesity with deconditioning as well as the nonsevere medically determinable mental impairments of intermittent mood stability and generalized

1

anxiety disorder. *See id.* at 18, 22-23. The ALJ went on to find that the Plaintiff had the RFC to perform light work with several additional exertional limitations. He ultimately concluded that the Plaintiff could perform her past relevant work as a paralegal and legal secretary with such an RFC and was therefore not disabled. *See id.* at 28-29. The Appeals Council denied the Plaintiff's request to review the ALJ's decision, *see id.* at 1-4, making that decision the final determination of the Commissioner, *see* 20 C.F.R. § 404.981.

## II. Standard of Review

A final decision of the Commissioner is subject to judicial review to determine whether it is based on the correct legal standards and supported by substantial evidence. *See* 42 U.S.C. § 405(g); *Seavey v. Barnhart*, 276 F.3d 1, 9 (1st Cir. 2001). Substantial evidence in this context means evidence in the administrative record that a reasonable mind could accept as adequate to support an ALJ's findings. *See Biestek v. Berryhill*, 587 U.S. 97, 102-03 (2019). If an ALJ's findings are supported by substantial evidence, they are conclusive even if the record could arguably support a different result. *See Irlanda Ortiz v. Sec'y of Health & Hum. Servs.*, 955 F.2d 765, 769 (1st Cir. 1991). But an ALJ's findings "are not conclusive when derived by ignoring evidence, misapplying the law, or judging matters entrusted to experts." *Nguyen v. Chater*, 172 F.3d 31, 35 (1st Cir. 1999).

## III. Discussion

The Plaintiff's sole argument relates to the interplay between the ALJ's evaluation of her nonsevere mental impairments at Step 2 and his subsequent RFC

assessment. I will begin, then, by sketching out the regulatory framework applicable to Step 2 and the RFC assessment.

At Step 2 of the sequential evaluation process, an ALJ considers "the medical severity" of a claimant's impairments. 20 C.F.R. § 404.1520(a)(4)(ii). An impairment is severe if it "significantly limits" a claimant's "physical or mental ability to do basic work activities." *Id.* § 404.1520(c). Conversely, an impairment is not severe if it does not significantly limit a claimant's ability to perform basic work activities. *See id.* § 404.1522(a).

When evaluating the severity of a mental impairment, the ALJ must consider the claimant's degree of limitation under the so-called Paragraph B criteria consisting of four broad categories of mental functioning: (1) understanding, remembering, or applying information; (2) interacting with others; (3) concentrating, persisting, or maintaining pace; and (4) adapting and managing oneself. *See id.* § 404.1520a(b), (c). In doing so, the ALJ uses a five-point scale—none, mild, moderate, marked, or extreme—to rate the degree of limitation. *See id.* § 404.1520a(c)(4). If the degree of limitation in each category is "none" or "mild," the ALJ will generally conclude that the impairment is not severe. *See id.* § 404.1520a(d)(1).

The limitations identified at Step 2 "are not an RFC assessment but are used to rate the severity of mental impairment(s)." SSR 96-8p, 1996 WL 374184, at *4 (July 2, 1996). The "mental RFC assessment used at steps 4 and 5 of the sequential evaluation process requires a more detailed assessment by itemizing various functions contained in the broad categories" of mental functioning. *Id.*

When the claimant has both severe and nonsevere impairments, the ALJ must still consider the impact of the nonsevere impairments when assessing the claimant's RFC. *See id.* § 404.1545(a)(2); SSR 96-8p, 1996 WL 374184, at *5 ("In assessing RFC, the adjudicator must consider limitations and restrictions imposed by all of an individual's impairments, even those that are not 'severe.' While a 'not severe' impairment(s) standing alone may not significantly limit an individual's ability to do basic work activities, it may—when considered with limitations or restrictions due to other impairments—be critical to the outcome of a claim.").

With this framework in mind, I now turn to the ALJ's decision in this case. The ALJ found at Step 2 that the Plaintiff's "medically determinable mental impairments of intermittent mood stability and generalized anxiety disorder, considered singly and in combination," were "non-severe" because they did "not cause more than minimal limitation in" her "ability to perform basic mental work activities." Record at 22. In doing so, the ALJ explained in detail why he found that the Plaintiff had only mild limitations in each of the four broad categories of mental functioning:

> The first functional area is understanding, remembering or applying information. In this area, the [Plaintiff] has mild limitation. The record reflects that [she] frequently denies difficulty with remembering or making decisions. Additionally, she was often described as being oriented and also displaying good long-term memory. Although there was one notation that [she] lost track of and distorted information in her short-term memory, this supports a finding of mild limitation in the area of understanding, remembering, or applying information.
>
> The next functional area is interacting with others. In this area, the [Plaintiff] has mild limitation. [She] is routinely reported as being pleasant albeit sometimes depressed. She displays good social judgment

4

and is cooperative. Additionally, her . . . prior work history, in which she worked for one employer for approximately seven years, shows she is capable of interacting with others, although her recent spell of being terminated supports a finding of mild limitation in interacting with others.

The third functional area is concentrating, persisting or managing pace. In this area, the [Plaintiff] has mild limitation. The record reflects that [she] frequently denies difficulty with concentration. Additionally, the record reflects that she often presents with normal concentration. However, her history of panic attacks supports a finding of mild limitation in the areas of concentrating, persisting, or maintaining pace.

The fourth functional area is adapting or managing oneself. In this area, the [Plaintiff] has mild limitation. [She] occasionally reports some anxiety, and as noted above, she has a history of panic attacks and has been terminated by her most recent employers, although she has a history of being consistently employed. These support a finding of mild limitation in the area of adapting or managing oneself.

*Id.* at 22-23 (citations omitted).

The ALJ went on to note that, while "the limitations identified in the" Paragraph B criteria were not, in and of themselves, an RFC assessment, his RFC assessment "reflect[ed] the degree of limitation" he "found in the" Paragraph B "mental function analysis." *Id.* at 23. He also acknowledged his obligation "to consider all of the [Plaintiff's] impairments" when assessing her RFC, "including impairments that are not severe." *Id.* at 20.

In his RFC assessment, the ALJ considered the Plaintiff's reported mental health symptoms of forgetfulness, anxiety, depression, trouble sleeping and concentrating, problems handling stress, and difficulties "get[ting] along well with others," and found that, while her "medically determinable impairments could reasonably be expected to cause the alleged symptoms," her "statements concerning

5

the intensity, persistence and limiting effects of [the] symptoms [were] not entirely consistent with the medical evidence and other evidence in the record." Record at 25.

The ALJ found "persuasive" the opinions of agency nonexamining consultants Stephen Kleinman, M.D., and Lisa Fitzpatrick, Psy.D., both of whom opined that the Plaintiff's mental health impairments were nonsevere and that she had "only mild limitations in the four 'Paragraph B' criteria." *Id.* at 27. Conversely, the ALJ found "unpersuasive" the opinion of treating provider Sarah Grace Alvarez, M.D., saying, "Dr. Alvarez's opinion that the [Plaintiff] has . . . additional limitations as a result of her mental impairments is unsupported by and inconsistent with the record as a whole . . . ." *Id.* The ALJ also found the opinion of psychological examiner James F. Whelan, Psy.D., "largely unpersuasive" to the extent Dr. Whelan suggested that the Plaintiff would "respond with anxiety and withdrawal when faced with stress" because that opinion was "vague" and "unsupported by and inconsistent with the detailed findings in the record supporting the adopted [RFC] and the opinions of Drs. Kleinman and Fitzpatrick." *Id.*

Ultimately, the ALJ did not include any mental limitations in his RFC assessment. *See id.* at 24.

The Plaintiff argues that the ALJ committed reversible error by failing to articulate why he did not include the mild mental limitations he found at Step 2 in his RFC assessment. *See* Plaintiff's Brief at 2-6, 9-15. She asserts "that an ALJ must either include limitations he finds credible" at Step 2 "in his RFC" assessment or "explain why he is omitting these credible limitations from the RFC" to satisfy SSR

6

96-8p's requirement that the ALJ provide a more detailed assessment of the Plaintiff's mental functioning as part of his RFC analysis. Reply Brief (ECF No. 13) at 1-2. And she argues that the ALJ's purported error was not harmless because the ALJ found her capable of returning to her past skilled work, which involved significant mental demands. *See* Plaintiff's Brief at 6-8.

I find the Plaintiff's arguments unavailing.

In his decision, the ALJ acknowledged the proper regulatory framework, discussed the Paragraph B criteria in detail, indicated that his RFC assessment accounted for the Plaintiff's nonsevere mental impairments and the degree of limitation he found at Step 2, discussed and evaluated the Plaintiff's alleged mental health symptoms in his RFC assessment, explained his reliance on the opinions of two medical experts who opined that the Plaintiff's mental limitations were nonsevere, and explained his rejection of the opinions of two medical experts who opined that the Plaintiff had more significant mental health limitations. No more was required to satisfy the regulatory requirements outlined above. *See Robles v. Comm'r of Soc. Sec.*, No. 19-1148 (GLS), 2021 WL 3553788, at *4-5 (D.P.R. Aug. 11, 2021) (holding that an ALJ adequately considered a claimant's "credited mild mental limitations when formulating the RFC not only by incorporating the step two analysis but also by considering [the claimant's] allegations and medical evidence on record in making the RFC determination"); *Munoz v. Comm'r of Soc. Sec.*, No. 22-1492-BJM, 2024 WL 1172666, at *9 (D.P.R. Mar. 19, 2024) (same); *Taylor v. Dudek*, No. 1:24-cv-10533-JEK, 2025 WL 756078, at *3-5 (D. Mass. Mar. 10, 2025)

(same); *Marshall v. Bisignano*, No. 1:24-cv-11431-JEK, 2025 WL 2207245, at \*8-9 (D. Mass. Aug. 4, 2025) (same).[1]

The Plaintiff's argument that further detail was required under SSR 96-8p ignores the context of that ruling, which does not require "additional detail for its own sake, but rather with the aim of itemizing broad categories . . . into specific, actionable limitations in the RFC." *Landers v. O'Malley*, No. 24-cv-20-amb, 2024 WL 4929847, \*6 (W.D. Wisc. Dec. 2, 2024). SSR "96-8p's 'more detailed assessment' presumes that the mental health impairments identified at step two actually impact [the claimant's] ability to work, and so require limitations in the RFC, which . . . must be more fleshed out and specific than a mere restatement of the paragraph B categories." *Id.* at \*7. But when, as here, an ALJ finds a claimant's mental impairments do not significantly impact her ability to work—i.e., that they are nonsevere and cause only mild limitation—there may well be no corresponding limitations to flesh out in the RFC. *See id.*

The Plaintiff also argues that the ALJ's decision relies too heavily on boilerplate language incorporating his Step 2 findings into his RFC assessment to permit meaningful judicial review. *See* Reply Brief at 3. It is true "that some courts have concluded that similar incorporation-by-reference language constitutes empty boilerplate where the ALJ did not discuss or give a reasoned consideration in

---

[1] That the ALJ explicitly considered the Plaintiff's mental impairments in his RFC assessment distinguishes this case from *Anderson v. Berryhill*, 368 F. Supp. 3d 128, 136 (D. Mass. 2019), a case cited by the Plaintiff where an ALJ's decision was remanded because the ALJ "did not mention" the claimant's "mental and cognitive limitations" in her RFC assessment and it was "unclear from the record whether the ALJ considered [the claimant's] mild mental limitations and found them to have no bearing on his RFC or whether she ignored those impairments altogether in determining his RFC."

8

formulating" a claimant's RFC. *Green v. Comm'r of Social Sec.*, No. 2:24-CV-1381-DAD-DMC, 2025 WL 2229369, at *6 (E.D. Cal. Aug. 5, 2025) (rec. dec.), *aff'd*, 2025 WL 2644699 (E.D. Cal. Sept. 15, 2025). But the ALJ's analysis in the case "is not mere empty boilerplate," where he "provided a detailed analysis at Step 2" and "then provided further analysis of [the] Plaintiff's mental limitations, which included a discussion of the medical opinion evidence, which [the] Plaintiff does not challenge." *Id.* When read as a whole, the ALJ's decision makes clear that he considered the Plaintiff's nonsevere mental impairments in assessing her RFC and leaves little doubt as to why he did not include any mental limitations.

Finally, the Plaintiff's primary reliance on *Wells v. Colvin*, 727 F.3d 1061 (10th Cir. 2013) is misguided. *See* Plaintiff's Brief at 9, 14; Reply Brief at 3. The ALJ's decision in *Wells* was ultimately remanded because it was not supported by substantial evidence, not because the ALJ failed to provide the "more detailed assessment" required by SSR 96-8p. As the Tenth Circuit explained in a later case,

> *Wells* held that, in light of the Commissioner's regulations, a conclusion that the claimant's mental impairments are non-severe at step two does not permit the ALJ simply to disregard those impairments when assessing a claimant's RFC and making conclusions at steps four and five. . . . In *Wells*, however, the ALJ, in addition to his statement about the RFC at step two, separately discussed the claimant's nonsevere mental impairments in his RFC analysis at step four. We stated that his discussion, though far from systematic, may have been adequate to fulfill his duty at step four to determine the claimant's mental RFC. Ultimately, the problem in *Wells* was that the discussion was not supported by substantial evidence.

*Alvey v. Colvin*, 536 F. App'x 792, 793-94 (10th Cir. 2013) (cleaned up).

If anything, *Wells* lends further support to the idea that an ALJ who finds a claimant's mental impairments nonsevere at step 2 and discusses those nonsevere impairments in his RFC assessment—even if "far from systematic[ally]"—satisfies the requirements of SSR 96-8p.  *Wells*, 727 F.3d at 1065; *see also Suttles v. Colvin*, 543 F. App'x 824, 825-26 (10th Cir. 2013) ("After finding [the claimant's] depression non-severe at step two, the ALJ recognized that a distinct mental RFC assessment was required at step four . . . .  At step four, the ALJ discussed evidence relating to depression and then pointedly omitted any limitation associated with that mental impairment [from] the RFC . . . , though the ALJ admittedly could have been more explicit in tying the former discussion to the latter conclusion. . . . Taking common sense, not technical perfection as our guide, we hold that the ALJ conducted a mental RFC assessment separate from the non-severity determination made at step two." (cleaned up)).

## IV.  Conclusion

For the foregoing reasons, I recommend that the Commissioner's decision be **AFFIRMED**.

### *NOTICE*

*A party may file objections to those specified portions of a Magistrate Judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which <u>de novo</u> review by the District Court is sought, together with a supporting memorandum, within fourteen (14) days after being served with a copy thereof.  A responsive memorandum shall be filed within fourteen (14) days after the filing of the objection.*

***Failure to file a timely objection shall constitute a waiver of the right to <u>de novo</u> review by the District Court and to appeal the District Court's order.***

Dated: February 4, 2026

<u>/s/ Karen Frink Wolf</u>
United States Magistrate Judge